IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JAKE and ASHLEY KATES, | ) | |
| JOHN and BARBARA KATES, | ) | |
| STEVEN BRANCH, | ) | |
| JOHN and RENEE BROMAN, | ) | |
| JANET CATRON, | ) | |
| LANA HANDY, | ) | |
| LARRY and BARBARA LOCKWOOD, | ) | |
| SARAH ROSE, | ) | |
| MICHAEL and LISA SCUDIERO, | ) | |
| JERRY and MARGARET WILLEY, | ) | |
| As individuals and as representatives of | ) | |
| all others similarly situated, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No.: 08-0384-CV-W-FJG** |
| | ) | |
| CHAD FRANKLIN, JEREMY FRANKLIN, | ) | **Judge Fernando Gaitan** |
| and MICHAEL "PETE" FRANKLIN, | ) | |
| as individuals, d/b/a | ) | **FIRST AMENDED COMPLAINT** |
| FRANKLIN AUTO GROUP, an | ) | **CLASS ACTION** |
| unincorporated association, | ) | **FOR VIOLATION OF FEDERAL** |
| CHAD FRANKLIN NATIONAL AUTO | ) | **CONSUMER CREDIT** |
| SALES NORTH, LLC, | ) | **PROTECTION ACT** |
| CFS ENTERRPISE, INC., | ) | **AND STATE CONSUMER** |
| AMERICAN SUZUKI MOTOR CORP., | ) | **PROTECTION LAWS** |
| AMERICAN SUZUKI FINANCIAL | ) | |
| SERVICES COMPANY, LLC, | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| **Defendants.** | ) | |

<u>**FIRST AMENDED COMPLAINT**</u>

COME NOW Plaintiffs, by their attorneys, and upon information and belief after

reasonable investigation, allege as follows:

<u>**INTRODUCTION**</u>

1.      This is a federal class action under the Consumer Credit Protection Act, also

known as the Truth in Lending Act ("TILA") on behalf of the named plaintiffs and all persons

similarly situated who purchased and financed automobiles from defendants in response to a promotional program involving deceptive practices and unconscionable acts in advertising, sales, financing and performance of financing agreements, between May 1, 2007 and April 30, 2008 ("the Class Period").

2.     This lawsuit also alleges violations of Missouri and Kansas consumer protection laws by a family network of car dealerships in which the car manufacturer, a finance company, and others, were either negligent or complicit regarding several misrepresentations, deceptive practices and unconscionable acts regarding the creation and collection of unlawful car loan debts.

3.     In addition, on information and belief, members of the Franklin family conspired among themselves and others to manipulate their auto dealerships in Missouri and Kansas to engage in, conceal, or benefit from a pattern of multiple acts of mail and wire fraud, including forged and falsified loan applications, all in violation of federal and state law, including 18 U.S.C. § 1961, et seq.

4.     By this action, plaintiffs, on behalf of themselves and all others similarly situated, seek compensatory and punitive damages, statutory penalties, litigation fees and expenses, and equitable relief.

## JURISDICTION AND VENUE

5.     The Court has jurisdiction over the subject matter of this action under 28 U.S.C §§1331 and 1332d(2).    Plaintiffs assert a class action in which the amount in controversy exceeds $5 million dollars.

6.     This action asserts claims under the federal Truth in Lending Act, 15 U.S.C. Section 1602, et seq.; and state law claims under the laws of both Missouri and Kansas.

Case 0:08-cv-00084-JEG   Document 87-1   Filed 09/23/2008   Page 2 of 34

7.    Venue is proper under 28 U.S.C §1391b.

## PARTIES

### Plaintiffs

8.    The Plaintiffs are individuals and married couples who, as a result of a deceptive advertising and promotional program described herein, purchased cars from the Franklin Auto Group in 2007 and 2008 from stores in either Missouri or Kansas.   Each plaintiff entered a retail installment sale contact with Franklin Auto Group, who had arranged with the certain Finance Companies to accept the assignment of the loan contract.

9.    Plaintiffs Jake and Ashley Kates, husband and wife, reside in Lee's Summit, Missouri.

10.    Plaintiffs John and Barbara Kates, husband and wife, reside in Oak Grove, Missouri.

11.    Plaintiff Steven Branch resides in Lee's Summit, Missouri.

12.    Plaintiffs John and Renee Broman, husband and wife, reside in Kansas City, Kansas.

13.    Plaintiff Janet Catron resides in Kansas City, Kansas. Her car loan was from defendant American Suzuki Financial Services.

14.    Plaintiff Lana Handy resides in Leavenworth, Kansas.

15.    Plaintiffs Larry and Barabara Lockwood, husband and wife, reside in Marceline, Missouri.

16.    Plaintiff  Sarah Rose resides in Parkville, Missouri.

17. Plaintiffs Michael and Lisa Scudiero, husband and wife, reside in Marceline, Missouri.

18. Plaintiffs Jerry and Margaret Willey, husband and wife, reside in Oklahoma City, Oklahoma.

## Defendants

## Defendant Car Dealers

19. Defendants MICHAEL P. ("Pete") FRANKLIN, and his sons, CHAD FRANKLIN and JEREMY FRANKLIN, are individuals, doing business in this judicial district as well as in Kansas and other states, as a family auto enterprise under the name Franklin Auto Group (sometimes referred to herein collectively as "Franklin."). The Franklin Family, as the Franklin Family Auto Group, conspired to corruptly influence the various car dealerships controlled by the Family.

20. At all times mentioned herein, Defendant CFS ENTERPRISE, INC., (hereinafter, "CFS") was a Kansas Corporation with principal place of business at 6801 State Avenue, Kansas City, Kansas. Defendant CFS was doing business in this judicial district, and in Kansas, and other states, under various fictitious names, including Chad Franklin, Chad Franklin Suzuki of Kansas City, Legend Suzuki of Kansas City, and Franklin Auto Group. Chad Franklin Suzuki of Kansas City was a franchise of American Suzuki Motor Corporation. CFS was one of the dealerships controlled by the Franklin Family through the Franklin Auto Group enterprise.

21. Defendant CHAD FRANKLIN, NATIONAL AUTO SALES NORTH, LLC, (hereinafter, "Franklin North") is a limited liability company, organized and existing under the laws of Missouri, at all times mentioned herein, doing business in this judicial district and in

Kansas and in other states, as an automobile dealership, under various fictitious names, with a principal place of business at 2520 Burlington, North Kansas City, Missouri 64116. Fictitious names for the business include Pete Franklin Auto Sales, LLC; Pete Franklin National Auto Sales, North, LLC; Chad Franklin Auto of Kansas City, Legend Auto of Kansas City, Legend Auto, Chad Franklin National Auto Sales, LLC, CFNAS, LLC, and Franklin Auto Group. Franklin North was another of the dealerships controlled by the Franklin Family through the Franklin Auto Group enterprise.

22.     On information and belief, said businesses were, at all times mentioned herein, owned, controlled, and operated by the Franklin Family through the Franklin Auto Group enterprise in such a manner as to make it proper for the court to pierce the "corporate veil" and hold the Franklin family members personally liable for the wrongs done through the corporations or other business entities. The Franklin Family had meetings to coordinate the auto group strategies. Employees of all Franklin dealerships would regularly meet to plan strategy; members of the Franklin Family and employees of the various dealerships controlled by the Family would meet as often as every week to strategize about management, sales practices, and advertising campaigns. The Franklin Family caused the various dealerships to swap and share employees, car inventory and other resources. Further, the Franklin Family presented the Family's dealerships as a unit to banks, trying to obtain favorable terms on the basis of financial clout of the combined enterprises.

23.     This Complaint refers collectively to the members of the Franklin Family, the Franklin Auto Group, and Defendants CFS Enterprise, Inc., and CHAD FRANKLIN, NATIONAL AUTO SALES NORTH, LLC as the "Car Dealer Defendants" or "Defendants Car Dealers" or "Defendant Franklin."

**Defendant American Suzuki**

24.     Defendant AMERICAN SUZUKI MOTOR CORPORATION (hereinafter, "ASMC"), Brea, Calif., was founded in 1985 by Suzuki Motor Corporation (SMC), based in Hamamatsu, Japan.  SMC is a diversified worldwide automobile manufacturer, founded in 1909 and incorporated in 1920.   It has 141 distributors in 127 countries.  Defendant ASMC markets and distributes automobiles in the United States through its network of over 500 automotive dealerships in 49 states, including this judicial district.  Defendants CFS, Defendant Franklin North, and Jeremy Franklin Suzuki are franchise dealerships of Defendant ASMC, who distributed new Suzuki vehicles through these dealer locations pursuant to a franchise agreement between the entities.

**Defendant American Suzuki Financial Services**

25.     Defendant AMERICAN SUZUKI FINANCIAL SERVICES COMPANY, LLC, (hereinafter, "ASFS") is a corporation with principal offices in Little Rock, Arkansas, and Anaheim, California, and is controlled by Defendant ASMC as the captive "private-label" auto finance company intended to equip Suzuki franchise dealers with an expanded range of financing tools in addition to manufacturer-supported rates. ASFS became the dedicated finance company for American Suzuki Motor Corporation in September 2003, and specializes in indirect automobile financing. ASFS is responsible for credit decision-making and purchasing retail installment contracts from Suzuki franchise dealers.  At all times mentioned herein, Defendant American Suzuki Financial Services (hereinafter,  "ASFS"  or "Finance Company") was engaged in the business of acquiring, maintaining and servicing auto loan accounts obtained through their Suzuki dealer networks, and did such business in this judicial district in Missouri, and in Kansas and other states.

## CLASS ACTION ALLEGATIONS

26.     Plaintiffs bring this class action on behalf of themselves and all others similarly situated as members of a proposed Class, pursuant to Fed. Rule Civ. P. 23.   This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

27.     This class action is brought against defendants for violations of TILA and state consumer protection statutes.  Defendants used, approved, or negligently permitted Plaintiffs and consumers to be wronged by deceptive and misleading practices and unconscionable acts in advertising, sale and financing of Suzuki automobiles.  The lawsuit further alleges a conspiracy by defendants to create, enforce and collect unlawful debts from Class members.

28.     The proposed Class of individuals is defined as follows:

> All natural persons who purchased cars from the Car Dealer Defendants pursuant to the deceptive and unconscionable Promotional Plan, as described herein, between May 1, 2007 and April 30, 2008 ("the Class Period"); and who financed the purchase through either Defendant ASFS or another Finance Company who took an assignment of the retail installment contract, and who have been damaged thereby.

29.     The members of the proposed Class are so numerous that joinder of all members is impractical.  While the exact number of Class Members is unknown to plaintiffs at this time, and can only be ascertained through appropriate discovery, plaintiffs believe that over 650 Suzuki cars were sold during the promotional program, based on statements by Defendant CFS. Purchasers are geographically disbursed in at least 7 states.  The disposition of the claims of these persons in a single class action will provide substantial benefits to the court and to all parties.

30. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the common questions are the following:

30.1. Whether the subject advertising campaign was deceptive.

30.2. Whether Defendant Car Dealers violated the Truth in Lending Act and / or Missouri and Kansas consumer protection laws.

30.3. Whether Defendant ASMC is responsible as franchisor for the unlawful acts by Defendant Car Dealers.

30.4. Whether Defendant Finance Company is responsible for the unlawful acts by Defendant Car Dealers.

30.5. Whether Defendants have caused damage to the members of the Class and, if so, what is the measure of damages.

30.6. Whether Plaintiffs are bound by any arbitration agreement.

31. Plaintiffs' claims are typical of the claims of other Class members, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal and state laws.

32. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained competent and experienced counsel in class litigation. Neither plaintiffs nor counsel have any interests adverse to the interests of the Class.

33. A class action is the superior mechanism for resolving this dispute, since joinder is impracticable. Further, as the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impossible for many individual members of the Class to redress the wrongs done to them.

34.     In the alternative, the Class may be certified under the provisions of Fed. R. Civ. P. 23(b)(1) and /or 23(b)(2) because:   (a) the prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying results in adjudications regarding individual Class members which would establish incompatible standards of conduct for defendants;   (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;   and (c ) defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive relief with respect to the Class as a whole.

## GENERAL ALLEGATIONS

35.     Around May 2007, Defendant Defendants Chad Franklin and CFS Enterprise began running television, radio, and internet advertisements in the greater Kansas City, Missouri, media market, pursuant to a "promotional program."   These advertisements aired until approximately January 27, 2008.   (Examples of the ads are contained at Exhibit 1, incorporated by this reference.)

36.     The promotional program presented variations on a theme: a consumer could own a new Suzuki for no payments or very low payments (such as $29, $43,  $49, and $99 a month) because of rebates and incentives to be provided by American Suzuki through the Car Dealer Defendants.   The finance manager for defendant Car Dealers referred to the plan generally as "No Payments for Life," and described the plan in a letter written for Plaintiffs Broman, attached hereto as Exhibit 3.

37.     Sometimes these ads promised "reverse payments," others represented  that Car Dealer Defendants were involved in an "environmental test market" backed by American

Suzuki, and promised a new car for 3 to 4 years, plus free gasoline, for no payments or low payments.

38. The Car Dealer Defendants knowingly advertised the no-or-low-payment promotional program using advertisements that contained deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of one or more material facts in connection with advertisement, offering for sale, sale and financing of merchandise, in trade or commerce.

39. The advertisements were developed, produced, and distributed by and through the Christopher Ad Group in Coral Gables, Florida, at the direction and expense of Defendant Franklin.

40. It is fair to say the ads saturated the Kansas City market. Ads for the promotional program were aired at least 9,484 times during this period. Franklin Auto Group spent at least one million, ninety thousand dollars on these ads. (Exhibit 2, incorporated by this reference). The ads appeared, as intended, on both the Missouri and Kansas side of the state line.

41. Plaintiffs believed the ads were truthful and in reasonable reliance upon the ads, plaintiffs visited the Defendant Franklin's dealership locations to inquire about these programs.

42. One or more of the Car Dealer Defendants trained employees of the Dealerships to give glib, plausible answers to consumers' questions about the promotional program, including the following representations which concealed, misled or misrepresented one or more material facts:

42.1. That a consumer could pick out any 2007 Suzuki and own it for about six months at virtually no cost. ASMC and the dealer would supply funds to pay the monthly car loan payments using factory rebates and other incentive payments. This would allow the

customer to own the car with little or no payment -- variously, $99, $69, $49, $43, or $0 per month.

42.2.   That a consumer could return the car in six or twelve months, and trade it for a new Suzuki.   The first loan would be completely paid off by the dealer and ASMC; the Franklin dealerships would cover any depreciation through special rebates or incentives supplied by ASMC.

42.3.   That after the car was returned, the consumer could pick out and buy a new 2008 Suzuki, under the same promotional program terms as the 2007 car.

42.4.   That, under all variations of the plan, the consumer would receive a check within a few weeks of the initial purchase, in an amount sufficient to cover all or most of the car loan payments until the 2008 cars were available.  Another round of checks from American Suzuki rebates were supposed to  fund the 2008 car payments, until the 2009 cars were available.  Some variations of the promotional plan were called "Suzuki for Life," or "No Payments for Life" and consumers were told the cycle could continue for life.  Under other variations, consumers were told that the return-and-exchange program would last at least three or four cycles.

42.5.   That American Suzuki and American Suzuki Financial Services were financially backing this promotional program for the purpose of increasing Suzuki brand visibility on the roadways, building customer loyalty, and developing an inventory of used cars to help local dealerships make a profit.  They said the dealer would make a profit on the re-sale of used cars, which could be done through the used car dealerships such as Franklin North, the Missouri store.

43. The Car Dealer Defendants trained employees of the Dealerships to use deception, falsehood, exaggeration, innuendo and / or ambiguity to misstate or conceal material facts regarding the retail installment contract that plaintiffs were required to sign once they agreed to buy a car, including the following:

43.1. That the retail installment contract terms were non-negotiable in order to participate in the program.

43.2. That the promotional program required that consumers agree to finance certain additional items in excess of the sticker price by several thousand dollars. The total amount borrowed often exceeded the sticker price by more than $5000.00. These additional items included, without limitation, an extended warranty; GAP insurance; "destination charges" of about $650, administrative fees of $499, and a "Kansas City Market adjustment," of $1,500.

43.3. Franklin Salesmen were also trained to offer false rebates to customers. Some consumers were promised a $100 rebate, discount or other benefit for each new customer referred, as an inducement for entering into the transaction. Under other variations of the promotional plan, consumers were promised reimbursements for gasoline expenses up to 15,000 miles per year, or until the 2008 cars were available. Consumers did not get these rebates after the Car Dealer Defendants "canceled" the program without warning to consumers.

43.4. Employees of the Car Dealer Defendants misrepresented the nature of the "arbitration page" in the consumer's packet of forms. Consumers were told that the "arbitration page" meant only that the parties were agreeing to sit down and discuss any problems before involving attorneys or going to court. Consumers were told that it only

required an attempt to "come to terms" without the expense of lawyers. Further, employees of the Car Dealer Defendants told consumers that the arbitration page was not important because ASMC would be making the payments, not the consumer, and because the consumer would be trading cars in six months anyway.

43.5. That the legal terminology or "legalese" in the retail installment contract was not important, because ASMC would be making the payments, not the consumer, and because the consumer would be trading the car in six months anyway. The dealer and ASMC, according to Franklin employees, were guaranteeing that the terms of the promotional program would supersede the terms of the retail installment contract.

44. Defendant Franklin required plaintiffs to complete a credit application, including salary information. Plaintiffs furnished truthful salary information and other facts on the credit application. The Car Dealer Defendants trained employees to alter and falsify the information on credit applications, and in many cases to forge the signatures of the plaintiffs, and then to submit the falsified credit application to the Finance Companies by wire, or by facsimile, or by mail, in interstate commerce, thus engaging in a pattern of multiple acts of mail and wire fraud, each of which was an act in furtherance of the conspiracy alleged herein, by which plaintiffs suffered injury.

45. Many plaintiffs and other class members could not afford the monthly payments for these car loans, based on usual standards for qualification related to debt-to-income ratios, etc. Defendant Franklin agents knew or should have known this fact, based on the salary information that was supplied by consumers.

46. Defendant Franklin salesmen induced plaintiffs to enter transactions in which there was no reasonable probability that those consumers would be able to pay for the debt

personally because of their financial circumstances. They would be able to pay the "reverse payment" if the Defendant Franklin had been telling the truth about the promotional plan.

47. Defendant Franklin knew, but failed concealed certain material facts from consumers at the time of contract formation,, including the following:

47.1. That American Suzuki and American Suzuki Financial Services had not agreed to "financially back" or to fund this promotional program through rebates and incentives, as represented by Car Dealers; rather, the money for checks to consumers was coming from surplus loan proceeds. In other words, the consumer entered the agreement on the understanding that some amount would come from Defendants; in fact, the consumer was borrowing the entire payment, and one or more Defendants concealed (or failed to disclose) the true source of the funds.

47.2. That Defendant Franklin intended to "reapply" for credit every year for each returning consumer, often with a different lender,

47.3. That a new lender might increase the interest rate over what had been represented at the time of the initial contract.

47.4. That if a lender declined to extend credit, Franklin would tell the consumers that they may no longer be eligible to participate in the Franklin program.

47.5. That the Car Dealer Defendants intended to avoid any significant consequences for the deceptive program by asserting the "arbitration page" against complaining consumers; the page was included in the stack of papers signed at the time of purchase for the purpose of cutting off consumers' right to access to the court system, and requiring individual arbitrations as opposed to an efficient class resolution process.

47.6.   That the transactions the consumers entered were in violation of Defendant
Franklin Auto Group's agreements with approved finance companies.

**The Scheme Crumbles and Defendants "Cancel" the Program**

48.   In early 2008, the scheme began to crumble.  For a few consumers, Defendant Car
Dealers arranged for a trade of 2007 car for a 2008 car.   These few transactions enabled the Car
Dealer Defendants to sell even more cars, by pointing to these consumers as proof that the plan
was legitimate and appropriately funded.

49.   However, even these few transactions breached the original terms.  Defendant
Car Dealers did not pay off the first loan as was promised, but instead "rolled over the negative
equity" in the first car loan into a second car loan.  Defendant Car Dealers again submitted
forged and falsified credit applications to different lenders, who agreed to originate new loans for
amounts far in excess of the purchase price of the second automobile, resulting in an immediate
"upside down" position for the consumers. Defendant Car Dealers promised to provide a rebate
check from American Suzuki to cover the second car payments, but such checks either were not
issued, or were issued for an amount far less than had been promised under "the deal."

50.   Shortly after these initial trades, however, the scheme fell apart as a wave of
consumers returned with their cars after the agreed period of about six months.  The Car Dealer
Defendants failed and refused to take back the 2007 vehicles and to pay off the original loan
balance, or to allow consumers to purchase a 2008 Suzuki under the terms of the promotional
agreement.   The Car Dealer Defendants' employees told consumers that the program had been
canceled, and they contradicted or denied each of the representations above, and they revealed
the previously concealed facts as set forth in above.

51.   Plaintiffs protested that Defendant Franklin was breaching its promises to them
about the original "deal," but the Car Dealer Defendants had trained employees to deny that there

was a deal, to blame the promotional program on a "rogue employee" or the "ad agency," and to deny that the promotional program was part of the contract, and to deny that the representations concerning the program were enforceable or part of the written contract, and to further asserted that the consumer's only recourse was binding arbitration.

52.     As a direct result of the fraudulent and unlawful practices, Plaintiffs were "stuck upside down" in Suzukis. Their payments sky-rocketed as high as $750 per month, plus the value of the cars had depreciated, leaving thousands of dollars of negative equity. Consumers could not sell the cars without paying off the "upside down" loan, and many could not afford to make the inflated payments.

53.     Plaintiffs who were unable to make the payments begged Defendant Franklin to perform the deal as promised, or to take the car back, but Defendant Franklin failed and refused to do so.

54.     Plaintiffs who were unable to make the payments begged the Defendant ASFS or other Finance Companies to forbear on collection and help them hold accountable Defendant Franklin. Defendant ASFS failed and refused to forbear or to work with consumers, but continued to seek to enforce and collect an unlawful debt.

55.     The Car Dealer Defendants engaged in the following unconscionable acts:

55.1.     The Car Dealer Defendants took advantage of the inability of consumers reasonably to protect their interests because of the consumer's ignorance of the false representations or omissions made by Defendants in both the advertisements and point-of-sale statements.

55.2.     Defendant Franklin failed to give advance notice to consumers about the abrupt end of the promotional program, failed to give consumers the opportunity to avoid the

Case 3:08-cv-00484-JEG Document 87-1 Filed 09/23/2008 Page 16 of 34

un-bargained for contract terms, and failed to notify the finance companies of the substantial change in circumstances, specifically the abrupt and unannounced end of the promotion.

55.3.    Consumers were unable to receive any material benefit from the subject transaction; consumers would up owing far more than the car was worth.

55.4.    The Car Dealer Defendants hid the fact that the transaction was excessively one-sided in favor of Defendant Franklin and the finance companies.

55.5.    Defendant Franklin has attempted to use an arbitration agreement improperly to limit certain remedies provided by law.

56.    Some consumers have continued making full payments on the vehicles, to avoid damage to their credit.   Other consumers have had their vehicles repossessed for non-payment, and some consumers have surrendered their vehicles to the dealer or to the finance company.

57.    One or more of the Car Dealer Defendants profited from these transactions.

### Defendants ASMC and ASFS

58.    Defendants ASMC and ASFS knew or should have known of the contents of Defendant Car Dealers' promotional program, and knowledge that the program would rely on unlawful means.

59.    Upon information and belief, defendants ASMC and ASFS had the right to review and approve the various ads before they were aired, based on various agreements with the car dealers, and did in fact review and approve the promotional program, both before and during the Class Period.

60.    Upon information and belief, agents for defendants ASMC and/or ASFS were questioned by consumers whether the ads were misleading, deceptive, or otherwise unlawful, but such agents stated that the advertisements were appropriate and not unlawful.

61.    Upon information and belief, defendants ASMC and ASFS knew that nearly identical promotional programs were being run by other Suzuki dealerships, including Joe Gibson Suzuki in Spartanburg, South Carolina; ASMC and ASFS and knew that Franklin Auto Group's campaign ads were created by the same advertising agency, Christopher Ad Group.

62.    When Plaintiffs appealed to ASMC and ASFS for relief, they refused to ameliorate the harms done to consumers.  Instead, they allowed consumers to continue to be harmed through the wrongful collection actions and repossessions to proceed.

63.    Defendants ASMC and ASFS knowingly profited from those transactions as a result of Defendant Car Dealers' promotional program, and approved such advertisements knowing them to be deceptive, or else approved the advertisements as appropriate with respect to consumer disclosure without knowing whether the advertisements were lawful or unlawful.

69.    Upon information and belief, the Defendants ASMC and ASFS allowed the Car Dealer Defendants to submit credit applications in such a manner that the information was not easily confirmed, or was easily forged, in order to benefit from the Car Dealer Defendants' unlawful promotional tactics.

70.    Defendant  ASFS failed to use reasonable care to determine creditworthiness and failed to ask consumers to furnish proof of earnings, such as payroll check stubs or tax returns.

71.    Upon information and belief,  Credit applications were submitted to Defendant ASFS and to other Finance Companies in typewritten form, or otherwise in a manner which was not customary and which should have alerted Defendant ASFS and other Finance Companies to the fact that the consumer had not actually completed or signed this form, and therefore the information on the form may not be accurate.

72.     Defendant ASFS knew or should have known that consumers could not afford these loans, but said finance companies accepted assignment of these loans in which they knew or should have known that there was no reasonable probability that those consumers would be able to fully pay for the debt because of their financial circumstances.

73.     Defendant ASFS, knowing: that the underlying debt was induced by fraud as to the very essence of the agreement; that plaintiffs lacked reasonable opportunity to discover the truth; and that the debt was disputed by the plaintiffs, nonetheless made false and incomplete reports to credit reporting agencies.   In making false credit reports, Defendant ASFS  acted willfully, or in the alternative, in reckless disregard of consumers rights under federal and state laws asserted herein.

74.     Some Plaintiffs and other class members offered to surrender vehicles to ASFS at an agreed time and place, but Defendant ASFS  failed and refused to cooperate with consumers, and instead subjected the consumers to unlawful  debt collection practices, including:  making false representation of the character and legal status of the debt, and that the debt is still valid; communicating credit information which known to be false or incomplete.

## Count I – Truth in Lending Act Violations

### Defendants Franklin and ASMC

75.     Plaintiffs incorporate the foregoing allegations by reference, as if fully set forth herein.

76.     The foregoing actions by Defendant Franklin and Defendant ASMC violated the Consumer Credit Protection Act, otherwise known as the Truth in Lending Act, 15 U.S.C. Sections 1601-1665, and Regulation Z, as interpreted by federal regulations found at 12 C.F.R. 226.17,  226.24.

77.     Defendants are "creditors" within the meaning of 15 U.S.C. Section 1602(f) which defines creditors as those "who regularly extend, or arrange for the extension of, credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise."

78.     Defendant Franklin failed to disclose to Plaintiffs the true principal amount being financed, failed to disclose the amount of any distribution to consumer out of loan proceeds, and failed to properly compute and disclose the true annual percentage rate of the loan, as required by 15 U.S.C. Sections 1601-1665.

79.     The foregoing actions by Defendants Franklin misrepresented that a specific periodic consumer amount or installment amount could be arranged with lenders, when said defendants knew or should have known that there was no lender who usually and customarily arranges credit payments or installments upon the terms which were represented by defendants, all in violation of Section 1662 of TILA.

80.     Defendant Franklin did not make the statutorily required disclosures for closed-end credit mandated by 15 U.S.C. 1601-5.

81.     Defendant ASMC, as franchisor, had the right and responsibility to oversee any and all advertising and promotional programs used by franchisees including Defendant Franklin, and therefore Defendant ASMC knew or should have known about the foregoing actions by Defendant Franklin, but said Defendant ASMC failed and refused to exercise reasonable oversight over Defendant Franklin and thereby caused or contributed to cause the harms suffered by plaintiffs and the Class.

Case 0:08-cv-00084-JEJG Document 87-1 Filed 09/23/2008 Page 20 of 34

82.     Defendants' wrongful actions have directly caused Plaintiffs and other members of the Class to suffer damages, and in accordance with the provisions of 15 U.S.C. Section 1640, are entitled to recover damages, actual and punitive, in an amount to be determined by the court, plus costs and reasonable attorney's fees.

## Count II – Truth in Lending Act Violations

### *Defendant Finance Company*

83.     Plaintiffs incorporate by reference the foregoing general allegations as if fully set forth herein.

84.     Defendant ASFS, as a financial partner with ASMC, and as captive, private label lender for franchisor, had agreements with Suzuki dealers including defendant Franklin, and had the right and responsibility to oversee any and all advertising and promotional programs used by franchisees which used the ASFS name or logo, as some of the subject ads did;  and therefore Defendant ASFS knew or should have known about the subject ads and actions by Defendant Franklin,  but said Defendant ASFS failed and refused to exercise reasonable oversight over Defendant Franklin and thereby caused or contributed to cause the harms suffered by plaintiffs and the Class.

85.     Defendant ASFS had agreements with Suzuki dealers including Defendant Franklin, and had the right and responsibility to oversee any and all credit applications, and retail sale contracts used by franchisees including Defendant Franklin in which the individual finance company was named or to whom the loan was assigned, and therefore Defendant ASFS  knew or should have known about the foregoing ads and actions by Defendant Franklin,  but said defendant ASFS  failed and refused to exercise reasonable oversight over Defendant Franklin and thereby caused or contributed to cause the harms suffered by plaintiffs and the Class.

86.     Defendant ASFS's wrongful actions have directly caused Plaintiffs and other members of the Class to suffer damages, and in accordance with the provisions of 15 U.S.C. Section 1640, are entitled to recover damages, actual and punitive, in an amount to be determined by the court, plus costs and reasonable attorney's fees.

<u>**Count III – Missouri Merchandising Practices Act Violations**</u>

***Defendant Franklin and ASMC***

87.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

88.     Defendants are "persons" within the meaning of the Merchandising Practices Act, RSMo. §§ 407.020, and 407.010(5).

89.     The sale and financing of a vehicle subject to the promotional plan described herein constitutes sale of "merchandise" within the meaning of the Merchandising Practices Act, RSMo. §§ 407.020, and 407.010(4).

90.     Defendant Franklin, individually and through agents, employees and others acting on their behalf or at their direction, have engaged in methods, acts, uses, and employment of deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of one or more material facts in connection with advertisement, offering for sale, sale and financing of merchandise, in trade or commerce, all in violation of RSMo.   §§407.020, 407.010(1), as interpreted by regulations contained in 15 C.S.R.§§ 60-8 and 60-9.

91.     On information and belief, Defendants knew or reasonably should have known that the representations made to Plaintiffs and others were false and misleading, but that Plaintiffs and others would reasonably rely upon such promises and would be damaged by the breach thereof, but Defendants acted with intent to defraud Plaintiffs.

92. Defendants' violation of the Merchandising Practices Act, § 407.020, caused Plaintiffs and other members of the Class to suffer damages, including reasonable attorneys fees and costs, among other things.

93. Plaintiffs who are entitled to claim protection of this law include those who were at the time of the transactions, residents of Missouri, or those who dealt with agents of Defendant Franklin while said agents were transacting any business within the state of Missouri, including the Franklin store located at 2520 Burlington.

## Count IV – Missouri Merchandising Practices Act Violations

### *Defendant Finance Company.*

94. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

95. On information and belief, Defendant Finance Company knew or reasonably should have known that the foregoing representations made to Plaintiffs and others were false and misleading, but that Plaintiffs and others would reasonably rely upon such promises and would be damaged by the breach thereof.

96. Defendant Finance Company's violation of the Merchandising Practices Act, §407.020, caused Plaintiffs and other members of the Class to suffer damages, including reasonable attorneys fees and costs, among other things.

97. Plaintiffs who are entitled to claim protection of this law include those who were at the time of the transactions, residents of Missouri, or those who dealt with agents of Defendant ASFS  while said agents were transacting any business within the state of Missouri.

## Count V – Kansas Consumer Protection Act Violations

### K.S.A. §50-623

#### Defendants Franklin and ASMC

98.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

99.     Plaintiffs are "consumers" in that the vehicles they purchased were for household or family purposes, as defined in K.S.A. §50-624.  Plaintiffs who may claim protection of this act include those plaintiffs and class members who were Kansas residents at the time of the transactions, or who transacted any business with defendants from within the state of Kansas, including the Franklin store location in Kansas City, Kansas.

100.     Defendants are "suppliers" in that they are dealers who, in the ordinary course of business, engage in consumer transactions, within the meaning of K.S.A. §50-623,

101.     The transactions complained of are "consumer transactions" under K.S.A. §50-624, in that they are dispositions for value of property within the State of Kansas, as well as a solicitation by the supplier for the same.

102.     At all times herein, Defendant Franklin said that the dealer, the cars, and the loan promotional program had the sponsorship, approval, endorsement and backing of American Suzuki Motor Corporation and American Suzuki Financial Services, Inc.,  when they knew such representation was false, in violation of K.S.A. §50-626(b)(1)(A) and (B).

103.     Defendant Franklin falsely stated the reasons for offering or supplying the cars for sale or discounted terms under this promotional program in violation of K.S.A. §50-626(b)(10).

104.     Defendant Franklin used exaggeration, falsehood, innuendo and / or ambiguity to misstate or conceal material facts, in violation of K.S.A. §50-626(b)(2).

105. Defendant Franklin willfully or carelessly failed to state a material fact, or willfully concealed, suppressed or omitted material facts, in violation of K.S.A. §50-626(b)(3).

106. Defendant Franklin said some consumers would receive a $100 rebate, discount or other benefit for each new customer referred, as an inducement for entering into the transaction, but said consumers did not get the rebate because the receipt of such benefit was contingent on the continuation of the promotional program described herein, which was canceled afterwards, without warning to the consumer, in violation of K.S.A. §50-626(b)(1)(E).

107. Defendant Franklin said that the consumer transaction terms were misrepresented by a "rogue employee," and that Franklin had turned the matter over to their insurance company to handle, and that the consumer needed to sign a new statement "electing" arbitration in order to have the insurance company pay their claim, and stating that this process was necessary to obtain the consumer's rights and remedies, in violation of K.S.A. §50-626(b)(9).

108. The plaintiffs were unable to receive a material benefit from the subject of the transaction, because each would end up owing up to $50,000 in debt on a car worth maybe $25,000, in violation of K.S.A. §50-627(b)(3).

109. When the consumer transaction was entered into, there was no reasonable probability of payment of the obligation in full by the plaintiff, in violation of K.S.A. §50-627(b)4.

110. The transaction was excessively one-sided in favor of Defendant Franklin and the ASMC, in violation of K.S.A. §50-627(b)(5)

111. Defendant Franklin made numerous misleading statements of opinion on which the plaintiffs were likely to rely to their detriment, in violation of K.S.A. §50-627(b)(6).

112. Defendant Franklin attempted to use an arbitration agreement improperly to limit certain remedies provided by law, in violation of K.S.A. §50-627(b)(7).

113. Defendant Franklin's violation of the Act caused Plaintiffs and other members of the Class to suffer damages in the form of increased sales taxes, increased interest payments, liability to lenders for debt in excess of the trade-in value of the automobile, and reasonable attorneys fees, among other things.

114. Defendant ASMC, as franchisor, had the right and responsibility to oversee any and all advertising and promotional programs used by franchisees including Defendant Franklin, and therefore Defendant ASMC knew or should have known about the foregoing actions by Defendant Franklin, but said Defendant ASMC failed and refused to exercise reasonable oversight over Defendant Franklin and thereby caused or contributed to cause the harms suffered by plaintiffs and the Class.

115. Defendant ASMC's wrongful actions have directly caused Plaintiffs and other members of the Class to suffer damages, and in accordance with the provisions of K.S.A. §50-626(b)(1)(A) and (B) , are entitled to recover damages, actual and punitive, in an amount to be determined by the court, plus costs and reasonable attorney's fees.

## Count VI – Kansas Consumer Protection Act Violations

### K.S.A. §50-623

*Defendant Finance Company*

116. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

117. Defendant Finance Company is a "supplier" in that it is a dealer who, in the ordinary course of business, engages in consumer transactions, within the meaning of K.S.A. §50-623,

118.     Defendant Franklin's violation of the Act caused Plaintiffs and other members of the Class to suffer damages, including increased sales taxes, increased interest payments, liability to lenders for debt in excess of the trade-in value of the automobile, and reasonable attorneys fees, among other things.

119.     Defendant ASMC, as franchisor, had the right and responsibility to oversee any and all advertising and promotional programs used by franchisees including Defendant Franklin, and therefore Defendant ASMC knew or should have known about the foregoing actions by Defendant Franklin, but said Defendant ASMC failed and refused to exercise reasonable oversight over Defendant Franklin and thereby caused or contributed to cause the harms suffered by plaintiffs and the Class.

120.     Defendant Finance Company had the right and responsibility to oversee any and all advertising and promotional programs used by Defendant Franklin, and therefore Defendant Finance Company knew or should have known about the foregoing actions by Defendant Franklin, but said Defendant Finance Company failed and refused to exercise reasonable oversight over Defendant Franklin and thereby caused or contributed to cause the harms suffered by plaintiffs and the Class

121.     Defendant Finance Company's wrongful actions have directly caused Plaintiffs and other members of the Class to suffer damages, and in accordance with the provisions of K.S.A. §50-626(b)(1)(A) and (B) , are entitled to recover damages, actual and punitive, in an amount to be determined by the court, plus costs and reasonable attorney's fees.

### Count VII – Fraud

*Defendant Franklin.*

122.     Plaintiffs incorporate the foregoing allegations by reference as if fully set forth herein.

{137588.DOC}

123.    The Car Dealer Defendants made the representations as set forth above, in the advertising and solicitation for the promotional plan, intending that plaintiffs rely upon such representations.

124.    These representations were false.

125.    The Car Dealer Defendants knew that the representations were false, or did not know at the time they were made whether the representations were true or false.

126.    The representations were material to the purchase by plaintiff of the car and the financing agreement.

127.    Plaintiffs relied on the representations in the purchase and financing of the car, and in so relying used that degree of care that would have been reasonable in each plaintiff's situation.

128.    As a direct and proximate consequence of their reliance upon the representations and omissions, Plaintiffs and other members of the Class were caused to suffer damages.

**Count VIII – Civil Conspiracy to Commit Deceptive Practices**

*Defendants Franklin Auto Group.*

129.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

130.    On information and belief, prior to May 2007 and at all times thereafter during the Class Period, Defendant Chad Franklin and one or more members of the Franklin Family or the Franklin Auto Group met to discuss and develop  the subject promotional program, and agreed upon a strategy and plan to implement the program as part of the coordinated operations of the Franklin Auto Group.   Said participants shall be referred to collectively herein as "conspirators."

131.    On information and belief, at all times herein, during the Class Period, Defendant Conspirators met frequently to discuss the promotional program and how to manage the scheme

it to produce more profits, and thus mutually benefit members of the Family and Franklin Auto Group.

132.    The scheme trapped consumers in car loans they could not afford, and coerced them to purchase a new car, roll any negative equity into a new car loan, trade in the used car, and generate exorbitant profits for Franklin and the Finance Companies. The initial finance company would be made whole when a new finance company originated the second car loan. The Buyer would be tricked into signing a binding arbitration agreement to give up rights to jury trial or class action resolution. There was a meeting of the minds among conspirators about the basic elements of the unlawful scheme.

133.    As part of the enterprise, the conspirators, members of the Franklin family, conspired among themselves and others to manipulate their auto dealerships in Missouri and Kansas to engage in, conceal, or benefit from a pattern of multiple acts of mail and wire fraud, including forged and falsified loan applications, as aforesaid, all in violation of federal and state law, including 18 U.S.C. § 1961, et seq., ("RICO Act.")

134.    By submitting credit applications with forged signatures and falsified information, on numerous occasions, to numerous finance companies, by wire and mail, Defendant Franklin engaged in a pattern of multiple acts of mail and wire fraud, each of which was an act in furtherance of the conspiracy alleged herein, by which plaintiffs suffered injury.

## Count IX – Unjust Enrichment

### *All Defendants.*

135.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

136.    Plaintiffs conferred a benefit on defendants by purchasing cars and signing retail installment sale agreements under false pretenses, namely the deceptive practices and

unconscionable acts set forth above; and further by making inflated payments to defendants on what was essentially an unlawful debt.

137.    Defendants appreciated the fact of the benefit in that Defendants knew or should have known of that plaintiffs' promise to make payments on the car purchase and financing agreement procured by fraud, as alleged herein, was essentially an unlawful debt.

138.    Defendants accepted and retained the benefit of the contract and the payments by plaintiff in circumstances that would render the retention unjust and inequitable, namely because the defendants knew the car loan was essentially an unlawful debt, procured by fraud, it would be unjust to permit Defendants to retain these benefits from plaintiffs.

139.    Defendants are also unjustly enriched by any manufacturers rebates, incentives and/or refunded insurance premiums that Defendants received by deceiving Plaintiffs.

## Count X – Injunctive and Declaratory Relief

### All Defendants

140.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

141.    Plaintiffs have a legally protectable interest as set forth above.

142.    Defendant Franklin and ASMC continue to assert the right of the dealer to advertise similar promotional plans in the manner described herein, and to continue to induce customers to buy and finance cars under the deceptive "bait and switch" scheme that is described herein.

143.    Defendant Franklin continues to file claims with the American Arbitration Association, claiming that he has the authority to elect arbitration and to use AAA, when in fact Plaintiffs have not authorized Defendant Franklin to file such claims, or, indeed, to use arbitration.

144.    Defendant Finance Company continues to seek to enforce and collect the fraudulent car loans by making negative reports to credit bureau, by self-help repossession of cars, and by demanding the right to collect a deficiency from certain plaintiffs, all the while claiming that ASFS is not liable for the actions of the car dealer in this case.

145.    Plaintiffs and other Class members seek injunctive relief enjoining Defendants and their affiliates from continuing or repeating these unlawful practices.

146.    Based on the foregoing, there is a justiciable controversy which presents a real, substantial, presently-existing dispute between the parties; and said controversy is ripe for judicial determination.

147.    Plaintiffs and the Class have no adequate remedy at law.

## **Prayer for Relief**

**WHEREFORE**, Plaintiffs pray, on behalf of themselves and all those similarly affected, that after trial by jury on all triable claims, a judgment in their favor be entered as follows:

A.      Declaring this to be a proper class action under Rule 23 of the Federal Rules of Civil Procedure.

B.      Declaring that the above-mentioned acts and practices are deceptive and unconscionable, in violation of R.S. Mo. § 407.020, and K.S.A. §§50-623, 632(a)(1), and violate the federal Truth in Lending Act

C.      Declaring the "arbitration form" described herein to be invalid, and not binding upon Plaintiffs or the Class.

D.      Ordering Defendants to notify all other finance companies or credit bureaus who have made any negative report about any plaintiff or Class member, and to furnish a court-

approved credit report, stating that the consumer was a victim of unlawful practices and that the debt has been paid in full as ordered by the court, and that the consumer shall suffer no negative credit report as a result of any transaction for cars pertaining to this promotional program.

E.      Awarding Plaintiffs and the Class all damages allowed under TILA, 15 U.S.C. §1640.

F.      Awarding Plaintiffs and the Class all damages allowed under R.S.Mo. § 407.020, including any damages allowable for the harm done to the credit rating of any plaintiff or Class member.

G.      Awarding Plaintiffs and the Class all damages allowed under K.S.A. 50-623, *et seq.,* including any damages allowable for the harm done to the credit rating of any plaintiff or Class member.

H.      Awarding Plaintiffs and the Class all actual and punitive damages allowed for fraud.

I.      Awarding Plaintiffs and the Class all actual and punitive damages allowed for civil conspiracy to commit deceptive practices;

J.      Awarding Plaintiffs and the Class the reasonable attorneys fees they incurred in bringing this action;

K.      Awarding plaintiffs the reasonable legal costs they incurred in bringing this action;

L.      Awarding Plaintiffs and the Class injunctive relief as provided by equity, including  either an order that Defendants  accept the traded cars and pay off any loan balance in excess of fair market value, or in the alternative, an order for restitution of all sums prayed for under Count IX, Unjust Enrichment; and ordering Defendants to file amended reports with any

credit bureau, correcting any negative report that has been made regarding any consumer in this case, and stating that the debt has been paid in full as agreed.

M.      Awarding Plaintiffs and the Class the right to compensation for these claims out of any funds collected by the Attorneys General of Missouri or Kansas, as damages, restitution, or penalties from these defendants for these transactions.

N.      Awarding such other and further relief as the Court deems just and proper.

### Demand For Jury Trial

Plaintiffs demand trial by jury of all claims and issues so triable.

Respectfully submitted,

**THE WHITEHEAD LAW FIRM, LLC**


By:_____
Michael K. Whitehead, MBE #24997
1100 Main Street, Suite 2600
Kansas City, Missouri  64105
Telephone:      (816) 876-2600
Facsimile:      (816) 221-8763
Email:  Mike@TheWhiteheadFirm.Com

**LAW OFFICES OF
JONATHAN R. WHITEHEAD, LLC**
Jonathan R. Whitehead MO# 56848
301 S. Douglas, Suite 201
Lee's Summit, Missouri 64063
Telephone      (816) 398-8305
Facsimile      (816) 278-9131
Email: jon@whiteheadlawllc.com

ATTORNEYS FOR PLAINTIFFS


### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 23, 2008, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to Defendants' Attorney of Record:

**Kevin D. Case**
Case & Roberts, P.C.
2300 Main Street, Ste. 900
Kansas City, Missouri 64108
*Attorney for Defendants.*


/s/ Michael K. Whitehead
Attorney for Plaintiff