IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

JAKE KATES and all others similarly situated, )
                                        Plaintiffs, )
                                                )
v.                                           ) No. 08-0384-CV-W-FJG
                                                 )
CHAD FRANKLIN NATIONAL AUTO SALES )
NORTH, LLC, and CHAD FRANKLIN, )
                                                )
                                        Defendants. )

## ORDER

Currently pending before the Court are (1) Defendants' Joint Motion to Compel Arbitration (Doc. No. 17); (2) Motion for Summary Judgment or, in the Alternative, to Dismiss of Defendant Chad Franklin National Auto Sales North, LLC (Doc. No. 15); (3) Plaintiff's Motion for Leave to File First Amended Complaint (Doc. No. 36); and (4) Plaintiff's First Motion for Extension of Deadlines Fixed in Scheduling and Trial Order (Doc. No. 41). As the Court finds the first motion to be dispositive, the Court will consider that motion alone.

### I. BACKGROUND

Plaintiff filed the present matter in the Circuit Court of Jackson County, Missouri on April 30, 2008. Plaintiff purchased a 2007 Suzuki Grand Vitara from CFS Enterprise, Inc., d/b/a Chad Franklin Suzuki on June 28, 2007. Plaintiff alleges in his petition that Defendant Chad Franklin National Auto Sales North, LLC, rather than CFS Enterprise, Inc., was the seller of the vehicle. See petition, ¶¶ 9, 10. Plaintiff alleges that he purchased the vehicle under a promotional plan offered by the dealership, and that misrepresentations were made

to him regarding the plan. Id., ¶¶ 14-18. Plaintiff makes claims for (1) Missouri Merchandising Practices Act (MMPA) violations; (2) federal Truth In Lending Act (TILA) violations; (3) fraud; (4) unjust enrichment; and (5) injunctive and declaratory relief. Plaintiff also seeks to pierce the corporate veil of the dealership and have the Court hold defendant Chad Franklin personally liable. Plaintiff additionally seeks to represent a putative class of claimants, defined as:

> All natural persons who, within the applicable statutes of limitation, purchased cars from Defendants or their Affiliates and enrolled in the Promotional Plan offered by defendant, as outlined herein.

Id. at ¶ 20.

As part of the transaction in which Plaintiff purchased the vehicle from the seller of the vehicle, plaintiff signed an Arbitration Agreement. See Ex. B to Doc. No. 18.[1] This Arbitration Agreement states, in relevant part, that "[a]ny claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application, purchase or condition of this vehicle, your purchase or financing contract or any resulting contract or relationship (including any such relationship with third parties who do not sign your purchase or financing contract) shall, at your or our election, be resolved by

---

[1] Plaintiff controverts this assertion, stating "The attached document is not the final statement of the parties on the subject of arbitration, and Mr. Kates' signature was procured by fraud. *See* Ex. B, contract between parties, and Plaintiff's Additional Statement of Uncontroverted Facts at SOFs 12-14." Plaintiff makes similar arguments as to all the facts regarding the Arbitration Agreement, as reflected on pages 2-3 of this Order. Notably, plaintiff's additional statement of uncontroverted facts at ¶¶ 12-14 does not explain how defendants obtained Mr. Kates' signature by fraud.

2

neutral binding arbitration and not by a court action." See Ex. B to Doc. No. 18.

The Arbitration Agreement also states that "IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS." Ex. B to Doc. No. 18. The Arbitration Agreement states, in bold-face type, "**PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS.**"

Plaintiff states that he took more than an hour to ask questions about the program until he was sufficiently assured that the offer was legitimate. Plaintiff then states he went into a room with Franklin's Finance Manager, Scott Frerichs. Frerichs presented Plaintiff with a stack of form contracts to sign where indicated. Plaintiff states he was pressured to sign the contracts quickly, and told that the specific amounts and terms of the contract did not matter and could not be negotiated, since Kates was going to trade the car in a year. Plaintiff states the Manager finished the meeting in less than 15 minutes. Plaintiff indicates he questioned the meaning of the arbitration form inserted into the stack of papers. Kates states he was told that the arbitration agreement meant that "in the event of a dispute, the parties would sit down and try to come to terms before going to court or involving attorneys."

The Retail Installment Contract provides: "Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us." Ex. B. to Doc. No. 28, p. 5.[2]

---

[2] Defendants deny that those remedies are not subject to the parties' separate Arbitration Agreement, as the Retail Installment Contract does not exempt deficiency

3

On July 2, 2008, defendants filed their joint motion to compel arbitration, seeking (1) an order compelling plaintiff to arbitrate his individual claims in this matter, (2) an order either dismissing or staying this action pending the arbitration of the individual claims, and (3) an order dismissing plaintiff's class claims pursuant to the parties' written agreement expressly waiving the right to bring or participate in a class action. See Doc. No. 17.

## II. DISCUSSION

Defendants state they are entitled to the relief requested in their motion to compel because (1) plaintiff entered into an agreement with the seller of the subject vehicle under which plaintiff agreed to submit all claims and disputes between plaintiff and the seller (and the employees, agents, successors and assigns of the seller) arising out of plaintiff's contract for the purchase of the vehicle to binding arbitration; and (2) plaintiff entered into an agreement with the seller of the subject vehicle in which he agreed to waive his right to participate in a class action with regard to claims against the seller in agreeing to resolve disputes with the seller by binding arbitration.

The Arbitration Agreement between plaintiff and defendants is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, at the agreement of the parties. The Supreme Court has interpreted the FAA as ensuring the enforceability of arbitration agreements. See Bass v. Carmax Auto Superstores, Inc., 2008 WL 2705506 (W.D. Mo. July 9, 2008)(citing Mastobuono v. Shearson-Lehman Hutton, Inc., 514 U.S. 52 (1995); Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1 (1983)). The central

---

actions from arbitration.

4

purpose of the FAA is to "ensure that private agreements to arbitrate are enforced according to their terms." Mastobuono, 514 U.S. at 54. The FAA sets forth a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp., 460 U.S. at 24.

The Eighth Circuit expanded upon the Supreme Court's interpretation of the FAA when it held that the very existence of an arbitration clause creates a "presumption of arbitrability" that should be controlling unless there is "positive assurance" that the contract cannot be interpreted to include the particular dispute at issue. Daniel Const. Co. v. Local 257, IBEW, 856 F.2d 1174, 1181 (8th Cir. 1988). When the parties explicitly agree that the arbitrator shall decide whether the dispute is arbitrable, courts are obligated to honor that provision. Express Scripts, Inc. v. Aegon Direct Mktg. Serv., Inc., 516 F.3d 695, 701 (8th Cir. 2008).

Defendants state, and this Court agrees, that the FAA is applicable to this matter because the transaction between the parties was a matter of interstate commerce.[3] Under the FAA, the Court must apply a two-step analysis to determine whether to compel arbitration. First, the Court must consider whether the parties intended to arbitrate the controversy, and whether the controversy falls within the scope of the arbitration agreement. Daisy Mfg. Co., Inc. v. NCR Corp., 29 F.3d 389, 392 (8th Cir. 1994). Second,

---

[3]Plaintiff does not challenge the facts supporting defendants' assertion that this transaction was a matter of interstate commerce. Those facts, in short, are: Plaintiff's purchase of the vehicle and execution of the documents memorializing the purchase of the vehicle occurred at a motor vehicle dealership located in Kansas City, Kansas. The vehicle was manufactured by American Suzuki Motor Corporation, a corporation located in Brea, California. The vehicle was manufactured outside of the states of Missouri and Kansas and was shipped to Defendant from outside of those States. Plaintiff financed his purchase of the Vehicle through Wachovia Financial Services, Inc., a lender located in Irving, Texas. Plaintiff is a resident of Lee's Summit Missouri.

5

the Court must consider whether there are external legal constraints which foreclose the arbitration of the parties' disputes. Mitsubishi Motors v. Soler Chrysler-Plymouth, 473 U.S. 614, 628 (1985).

**1.      Did plaintiff intend to be bound by the Arbitration Agreement?**

Defendants argue that plaintiff signed the Arbitration Agreement as part of the transaction in which he agreed to purchase the vehicle. Defendants note that the face of the Arbitration Agreement provided notice alerting plaintiff to the agreement, advising that it was important and would affect plaintiff's legal rights. Defendants note "A person signing an agreement has a duty to read it and, absent a showing of fraud, if the person is capable of reading and understanding the contract then it is charged with the knowledge of what the contract says." Nunn v. C.C. Midwest, 151 S.W.3d 388, 402 (Mo. App. 2004). Defendants state that in this instance, plaintiff is subject to the Arbitration Agreement's terms.

Plaintiff argues that the Arbitration Agreement was not incorporated into the final agreement of the parties; instead, plaintiff argues that the final agreement between plaintiff and Franklin's dealership "cancels arbitration agreements in other documents like the one attached to Defendants' motion." To support this theory, plaintiff notes that the final contract between plaintiff and Chad Franklin Suzuki states that it "cancels and supersedes any prior agreement including oral agreements, and as of the date below comprises, with any retail installment sale contract, the complete and exclusive statement of the terms of the agreement relating to the subject matters covered by this Agreement. See Ex. B. to Doc. No. 28. The contract includes the language "BUYER ACKNOWLEDGES THAT IF THIS BOX IS CHECKED, THIS AGREEMENT CONTAINS AN ARBITRATION CLAUSE." Id. The box is not checked in plaintiff's contract. Plaintiff argues that this means the

6

Arbitration Agreement was merged out of the contract between the parties.

Defendants reply that this argument is unpersuasive because (1) the merger clause that plaintiff relies upon concerns <u>prior</u> agreements, and the Arbitration Agreement was executed <u>contemporaneously</u> with the other agreements (<u>see</u> Plaintiff's Exhibit A to Doc. No. 28, at ¶ 25, stating, "Also in the stack of papers I signed was a form entitled 'arbitration agreement.'"); and (2) the arbitration agreement referred to by the checkbox in the contract is the arbitration agreement found on the reverse side of the contract (<u>see</u> Exhibit B to Doc. No. 28, p. 2), not the separate Arbitration Agreement signed by plaintiff.

As noted by defendants, arbitration agreements that are separate from an underlying purchase or financing agreement are not unusual and are routinely enforced. <u>See, e.g.</u> <u>Johnson v. 21st Mortg. Corp.</u>, Case No. 2:07cv355KS-MTP, 2008 WL 906817 (S.D. Miss. April 3, 2008); <u>Howard v. Wells Fargo Minnesota, NA</u>, Case No. 1:06CV2821, 2007 WL 2778664 (N.D. Ohio September 21, 2007); <u>Hemphill v. Coldwell Banker Real Estate Corp.</u>, Case No. 4:05CV169-P-D, 2007 WL 3244793 (N.D. Miss. November 1, 2007). The Court further finds that the merger clause does not prohibit the forming of a separate arbitration agreement contemporaneously with the other contracts in this matter. <u>See</u> <u>In re Union Fin. Svcs. Gp., Inc.</u>, 325 B.R. 816 (Bky. E.D. Mo. 2004); <u>Ramierez-Baker v. Beazer Homes, Inc.</u>, 2008 WL 2523368 (E.D. Cal. Jun3 20, 2008). Therefore, the Court finds the Arbitration Agreement should apply, as plaintiff's actions demonstrate an intent to be bound by the Arbitration Agreement and the Arbitration Agreement was not "merged out" of the contract between the parties.

**2.     Do plaintiff's claims fall within the scope of the Arbitration Agreement?**

The Arbitration Agreement's scope is described as "any claim or dispute . . . which arise out of or relate to your credit application, purchase or condition of the vehicle, your purchase or financing contract or any resulting transaction or relationship . . . ." See Ex. B. to Doc. No. 18, Arbitration Agreement. Defendants assert that plaintiff's allegations in the state court petition arise out of and relate to plaintiff's credit application as well as the financing of the vehicle. In his suggestions in opposition, plaintiff does not argue that his disputes do not fall within the scope of the Arbitration Agreement. The Court agrees with defendants, and finds that plaintiff's claims fall within the scope of the Arbitration Agreement as well.

### 3. Is the Arbitration Agreement enforceable?

Finally, defendants state that the Arbitration Agreement is not unconscionable and must be enforced. Defendants note that plaintiff could have taken his business elsewhere if he believed the Arbitration Agreement was unacceptable. Further, defendants argue that the Arbitration Agreement is neither procedurally nor substantively unconscionable.

Plaintiff states that the Arbitration Agreement is procedurally unconscionable in that it is a contract of adhesion, and was presented in a "take it or leave it" fashion. Plaintiff also argues that he was pressured to sign the documents quickly and he completed the paperwork in less than fifteen minutes. However, this Court agrees with the reasoning of Judge Smith in a similar case:

> Plaintiff was not obligated to buy a car from Defendant, was not obligated to finance the purchase and was not obligated to obtain financing from Defendant. There mere fact that the contract was a "form contract" and is used in all of Defendant's transactions-even if on a "take it or leave it" basis- does not make the contract unenforceable.

Bass v. Carmax Auto Superstores, Inc., 2008 WL 2705506 at *2 (W.D. Mo. July 9, 2008).

8

Additionally, plaintiff has not demonstrated that fifteen minutes was not a sufficient amount of time to review the contracts and other documents related to the transaction in this lawsuit. The Court finds that plaintiff has not demonstrated the Arbitration Agreement is procedurally unconscionable.

Plaintiff also argues that the Arbitration Agreement is substantively unconscionable, in that (1) the Retail Installment Contract for the motor vehicle loan provides a right to sue to recover additional proceeds in the event that proceeds of a sale do not pay all of the amounts owed by the consumer, making the Arbitration Agreement one-sided; (2) the Arbitration Agreement itself is one-sided because it allows for self-help repossession outside of arbitration; and (3) its class action waiver provision deprives the putative class members of a remedy.

Defendants reply, and this Court agrees, that (1) a suit for additional proceeds after sale of an automobile appears to fall within the scope of the parties' Arbitration Agreement; (2) self-help remedies, according to the Arbitration Agreement, are retained by both plaintiff and defendant, and thus are mutual and not one-sided; and (3) the mere existence of a class action waiver within an arbitration agreement does not render the Arbitration Agreement substantively unconscionable, absent limitations on the remedies available to claimants. See Bass v. Carmax Auto Superstores, Inc., 2008 WL 2705506 (W.D. Mo. July 9, 2008) and Gutierrez v. State Line Nissan, Case No. 08-0285-CV-W-FJG (W.D. Mo. Aug. 4, 2008) Plaintiff also argues that the Arbitration Agreement imposes unreasonable arbitration costs; however, the Court agrees with defendants that it would be odd in the extreme to invalidate the Arbitration Agreement because it places burdensome costs upon defendants, the parties seeking to compel arbitration. Therefore, the Court finds that

9

plaintiff has not demonstrated the Arbitration Agreement is substantively unconscionable.

### III.  CONCLUSION

For these reasons, the Court hereby **GRANTS** Defendant's Motion to Compel Arbitration (Doc. No. 17). It is **ORDERED** that proceedings in this case are stayed pending the outcome of arbitration. It is further **ORDERED** that the parties shall file a Joint Status Report on or before **April 24, 2009**, or at such time as the arbitration proceeding is concluded, whichever is earlier, and every six months thereafter.

All remaining motions are **DENIED AS MOOT.**

**IT IS SO ORDERED.**

Date: 12/01/08  **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri  Fernando J. Gaitan, Jr.
Chief United States District Judge